## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BLAIR T. KRANCH

        Plaintiff,

        v.

TAMAQUA AREA SCHOOL DISTRICT

        Defendant.

CIVIL ACTION NO. 3:08-CV-83

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is the Motion for Summary Judgment of Defendant Tamaqua Area School District ("The District"). (Doc. 24.) For the reasons provided below, Defendant's motion will be granted. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1367.

## BACKGROUND

Plaintiff Blair T. Kranch ("Kranch") worked as a full-time employee at the Tamaqua Area School District from 2002 until 2007. (Makuta Aff. ¶2.) From 2002 to 2006, Kranch worked primarily in the cafeteria, but then assumed the position of groundskeeper. (Kranch Dep. 7:15-8:14, Nov. 13, 2008.) Kranch says that the change in positions was simply because there was an opening (Kranch Dep. 8:18-19); Carol Makuta, who was the assistant superintendent and later the superintendent of the District during Plaintiff's employment, claims that this change occurred to ensure that Kranch would have less interaction with people, due to his conflicts with co-workers and supervisors. (Grievance Hr'g Tr. 67-69, Jan.

9, 2008.)

On August 12, 2004, Kranch received a letter from Michael Melnick, the District's Buildings and Grounds Supervisor, censuring Kranch for failing to "report off" in a timely manner. (Doc. 25, Ex. 5.) That letter also stated that a review of the Plaintiff's record revealed several other similar occurrences and warned that "further unsatisfactory practices can and will result in future disciplinary action." (*Id.*)

On February 14, 2005, Kranch received a letter from then-Assistant Superintendent Makuta, in which she found that Kranch "interfered with the orderly operation of the cafeteria . . . walked away from [his] work responsibilities without properly reporting to [his] immediate Supervisor, Mrs. [Kristin] Melnick," and failed to amend his time sheet. (*Id.*) During the subsequent investigation of this incident, Kranch acted in a "defiant, insubordinate, disrespectful and disorderly" manner and "declared continued insubordination regarding [his] Supervisors' recommendations." (*Id.*) As a result, then-Superintendent Frederick T. Bausch suspended Kranch for one day without pay.

On April 20, 2005, Bausch wrote two (2) letters to Kranch. The first regarded a meeting on April 14, 2005 to discuss Mr. Kranch's failure to "call off" properly again. (Doc. 25, Ex. 5.). The second letter was a written reprimand for a threatening comment that Kranch made to a co-worker. (*Id.*) On May 4, 2005, Bausch wrote a letter informing Kranch that he would be suspended for three (3) days without pay for failure to "follow established procedures to report your absence from work." (*Id.*) On June 7, 2005, Bausch again wrote Kranch a letter for failing to submit the proper documentation necessary to take a valid medical leave, and informing Kranch that the days he missed would be charged to his time under the Family & Medical Leave Act because Kranch had already used all of his allocated

2

leave days for the year. (*Id.*)

On March 24, 2006, Mr. Melnick wrote Kranch a letter reprimanding him for using angry, threatening, and aggressive language toward a co-worker, who Kranch later approached in a threatening manner and reportedly challenged the co-worker to "get it over with now." (Doc. 25, Ex. 5.) Again, on September 12, 2006, Makuta wrote Plaintiff a letter regarding his threatening and hostile behavior. (*Id.*) She noted that the District had previously addressed Kranch's behavioral problems and offered him resources to help understand the District's policy regarding verbal abuse. (*Id.*) Kranch was suspended for five (5) days and "advised that further repeat of this behavior may result in [his] termination."

On March 27, 2007, Makuta wrote Mr. Kranch another letter, around which much of this litigation is centered. This letter was a summary of a meeting that took place between Kranch, Makuta, Mr. Melnick, and Bruce Gottstein, the president of the union for custodial workers, on March 15, 2007. (Doc. 25, Ex. 5.) This meeting concerned Mr. Kranch's locking of a loading dock door on five occasions,[1] which interfered with the routine of another day shift custodian, a report that he had followed second-shift night custodians after they left work, that second-shift custodians had placed cardboard over the windows because Kranch was reportedly peering in on them while they worked, that he had reportedly stated that some of his co-workers performed fellatio on Mr. Melnick and then pantomimed that act, and other potentially threatening or abusive statements made by Kranch. (*Id.*) Makuta's letter informed Kranch that he was suspended without pay and that she planned to discuss his continued employment with the School Board on April 10, 2007. (*Id.*). Mr. Kranch was

---

[1] At this meeting, Mr. Kranch apparently claimed that Makuta had told him to lock this door, a statement that Makuta dispels as "absolutely inaccurate" in her letter.

informed that he had the right to be present at this "Executive session," to legal counsel, to request in writing that the matter be discussed at an open meeting, and that, if he so requested, Mr. Kranch would be entitled to a due process hearing in front of the Board of Directors. (*Id.*) Mr. Kranch was notified by letter on April 11, 2007, that the School Board had determined that his conduct provided a valid cause for dismissal and was terminated. (*Id.*)

Also in March of 2007, Mr. Kranch reported to Assistant Superintendent Wayne Brookhart that Mr. Melnick was engaged in a consensual sexual relationship with another employee of the District, Debbie Kamant. (Kranch Dep. 15:3-18:22.) Makuta pursued an investigation of this relationship because she felt that something inappropriate might be taking place, despite the District's lack of a written policy regarding sexual relationships in the workplace. (Makuta Dep. 12:7-17, May 21, 2009.) Makuta was concerned due to Mr. Melnick's position as Ms. Kamant's supervisor. (Makuta Dep. 12:18-12:23.) Ultimately, Makuta determined that the relationship was consensual and did not have conclusive information to make a judgment that the relationship was appropriate. (Makuta Dep. 13:1-13:21.) According to Makuta, the District was already looking into the relationship between Kamant and Melnick when Plaintiff reported it to Brookhart. (Makuta Dep. 26:11-15.)

In his deposition, Mr. Kranch testified that he filed two Workers' Compensation claims for injuries to his rotator cuff incurred during two heavy snowstorms in the early part of 2007. (Kranch Dep. 24:13-26:9.) These claims ultimately settled for a sixty thousand dollar ($60,000) lump sum. (Kranch Dep. 26:16-27:7.) It is unclear precisely when Mr. Kranch filed these claims from the record, but he testified that it was approximately one or two weeks before he was terminated. (Kranch Dep. 25:22-26-1.) Makuta states that, as of the suspension on March 27, 2007, Kranch had not submitted the information to make an official

4

report of a work injury as memorialized in a letter dated April 2, 2007. (Makuta Aff. ¶ 5; Doc. 25, Ex. 5.) Plaintiff also testified that it was, in fact, Ms. Makuta who told him to keep the loading dock door shut. (Kranch Dep. 35:17-22.) Mr. Kranch also denies miming the act of fellatio, but admits to saying that his co-workers "kissed asses." (Kranch Dep. 36:24-37:6.)

At the grievance hearing following his termination, Kranch testified that he had not improperly followed the second-shift custodians, but was instead invited by his on-and-off girlfriend, Jeanie Azbell, to follow her home; Azbell was working as a second-shift custodian on the night in question. (Grievance H'rg Tr. 94, 109.) He also stated that he was not peering in the window at the second-shift custodians because there would have been no need to, as he had a key to the building. (Grievance H'rg Tr. 105.) According to Judy Coleman, another second-shift custodian, the cardboard had been put up because Azbell requested it after Kranch had beaten Azbell. (Grievance H'rg. Tr. 52-53.)

Mr. Kranch was born on December 5, 1945; he was sixty-one (61) years old at the time of his termination. Plaintiff was replaced by Bruce Gottstein. (Makuta Dep. 7:1-4). Gottstein was born in October, 1952; he assumed the groundskeeper position previously held by Mr. Kranch on April 17, 2007, when Mr. Gottstein was fifty-four (54) years old. (*See* Makuta Aff. ¶ 3.) Mr. Gottstein was transferred to a different location on December 7, 2008. (Makuta Aff. ¶ 3.) On April 20, 2009, Ray Kunkel was appointed by the School Board to replace the position held by Gottstein and previously Kranch; at the time he was appointed, Mr. Kunkel was forty-four (44) years old. (Makuta Aff. ¶ 4.) In her deposition, Makuta testified that, at that time, she was not sure of Gottstein's age and that Mr. Gottstein appeared older than Mr. Kranch to her. (Makuta Dep. 7:8-9:9.)

A Grievance Arbitration Hearing was held on January 9, 2008. (Doc. 25, Ex. 2.) Mr.

Kranch was represented by a union attorney during these proceedings, was given the opportunity to cross-examine witnesses, introduce documentary evidence, and present testimony. The relevant contractual provision in the Arbitration was the "just cause provision" which stated that no employee can be "reduced in rank or compensation or deprived of any advantage without just cause." (Doc. 25, Ex. 8). Arbitrator Skonier found that Plaintiff's "conduct went far beyond the bounds of workplace vulgarity. The fact that the [Plaintiff] has such a poor disciplinary record and had been afforded opportunities to correct his behavior, yet did not do so, left the District with little recourse. Based on a review of all the credible evidence of record, the District demonstrated just cause for its actions." (Doc. 25, Ex. 8.) As a result, Kranch's termination was upheld.

Plaintiff filed his Complaint in the Court of Common Pleas of Schuykill County; Defendant filed a notice of removal. (Doc. 1.) An Amended Complaint was filed on February 15, 2008. (Doc. 7.) This Complaint alleged violations of the Age Discrimination in Employment Act of 1967 (ADEA) based on a disparate treatment theory (Count I), violations of the ADEA based on disparate impact (Count II), unlawful retaliation by the District based on Plaintiff's filing of a Workers' Compensation claim (Count III), violations of the Pennsylvania Whistleblower's Act (Count IV), violations of the Pennsylvania Human Relations Act (PHRA) (Count V), and violations of 42 U.S.C. § 1983 based on procedural due process and equal protection (Count VI).[2] Defendant filed a motion for Summary Judgment on July 15, 2009. (Doc. 24.) This motion has been fully briefed and is now ripe for

---

[2] In his Brief in Opposition to the instant motion, Plaintiff agrees that he has no separate cause of action for equal protection violations because such claims are subsumed in the ADEA claims. Thus, the Court will not address these claims.

disposition.

## **LEGAL STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Id.* An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable

7

to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

# DISCUSSION

### 1.    ADEA: Disparate Treatment

The ADEA provides:  "It shall be unlawful for an employer . . . to discharge an individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age . . . ."  29 U.S.C. § 623(a).  ADEA plaintiffs may establish a cause of action by demonstrating disparate treatment.  *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 300 (3d Cir. 2004). Moreover, in such instances, proof of discriminatory intent is a crucial component. *Id.* at 300 (citing *Hazen*, 507 U.S. at 610)).  ADEA plaintiffs with only indirect evidence of discriminatory intent claiming disparate treatment must proceed under the *McDonnell Douglas* burden-shifting framework.  *Id.*  In the instant matter, Plaintiff offers only indirect evidence of Defendant's alleged discriminatory intent.  Consequently, analysis of Plaintiff's age

8

discrimination claims must proceed under the *McDonnell Douglas* analytical framework.[3]

### i)     Prima Facie Case

The burden-shifting framework set forth in *McDonnell Douglas* first requires Plaintiff to establish his prima facie case, which, if successful, raises an inference of age discrimination. *Keller v. Ortix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997); *Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 522 (3d Cir. 1993); *Weldon*, 896 F.2d at 797.  Plaintiff may establish his prima facie case by showing: (1) membership in a protected group, i.e. at least forty (40) years of age; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances supporting an inference of discrimination. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002).

"Common circumstances giving rise to an inference of unlawful discrimination include the hiring of someone not in the protected class as a replacement or the more favorable treatment of similarly situated colleagues outside of the relevant class." *Bullock v. Children's Hosp. of Phila.*, 71 F. Supp. 2d 482, 487 (E.D. Pa. 1999).  "Although a plaintiff may make out a prima facie case with such evidence . . . neither of these is required." *Id.* (citing *Pivirotto v. Innovative Sys.*, 191 F.3d 344, 356-57 (3d Cir. 1999)).  Thus, the analysis of whether an inference of discriminatory animus has been raised is governed by the "central focus" of the prima facie case -- that is, whether Defendant treated Plaintiff less favorably than other employees because of his age.  *See Sarullo v. United States Postal Serv.,* 352 F.3d 789, 798 (3d Cir. 2003) (citing *Pivirotto*, 191 F.3d at 352). As little as a five year

---

[3]     State PHRA claims are subject to the same analysis as federal ADEA claims. *See Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 972 (3d Cir. 1998).  Thus, while the Court will discuss Plaintiff's claims under the framework of the ADEA, the resulting analysis applies with equal force to Plaintiff's PHRA age discrimination claim.

difference in age can be sufficient to establish an inference of discrimination.  *See, e.g., Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir. 1995).

"Where the employee is unable to establish a prima facie case, . . . no inference of discrimination is raised and the employer has no burden to proffer a reason for any action." *Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 167 n.1 (3d Cir. 2001) (citing *Spangle v. Valley Forge Sewer Auth.*, 839 F.2d 171, 174 (3d Cir. 1988)).  However, when a prima facie case is established, the burden of production then shifts to Defendant to "articulate some legitimate, nondiscriminatory reason for the adverse action."  *Metal Serv. Co.*, 892 F.2d at 347 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Reviewing the evidence offered by Plaintiff in the light most favorable to him, Plaintiff has offered sufficient evidence to establish a prima facie case of age discrimination. Kranch is over forty years old, was qualified to perform the work of a groundskeeper and was subject to an adverse employment decision, namely, termination. Although the proof of the fourth prong here is tenuous, being based solely on the replacement of Plaintiff with Gottstein, the seven year  difference in age is sufficient in the Third Circuit to at least raise the inference of age discrimination. As such, Plaintiff has made out a prima facie case for disparate treatment under the ADEA. Thus, in accordance with *McDonnell Douglas,* the burden shifts to Defendant to provide a facially legitimate reason for the adverse employment action taken against Plaintiff.

### ii)      Non-Discriminatory Reason

An adequate, nondiscriminatory reason for the adverse action taken against Plaintiff serves to "dispel[] the inference of discrimination arising from Plaintiff's initial

10

evidence." *Keller*, 896 F.2d at 797. To satisfy its burden, Defendant need not prove that the articulated reasons actually motivated its conduct. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). Rather, Defendant must only introduce "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason" for the adverse employment action. *Id.* Plaintiff then bears the burden of demonstrating that the alleged legitimate, nondiscriminatory reasons advanced by Defendant are but a pretext, aimed at concealing Defendant's discriminatory motives. *Ezold*, 983 F.2d at 522 (citing *Burdine*, 450 U.S. at 257). If, however, Defendant fails to satisfy this minimal burden of production, the Court must deny Defendant's motion in favor of Plaintiff. *Keller*, 130 F.3d at 1108.

The reasons tendered by Defendant are that the long disciplinary history of the Plaintiff created a valid reason to fire him. As outlined above, Plaintiff's employment record with the District is rife with instances of insubordination, verbal abuse and threatening actions towards co-workers. Furthermore, an arbitrator ruled that Kranch's behavior was sufficient to create just cause for the termination of his employment with the District. Clearly, Defendant has satisfied the relatively light burden of production required under *McDonnell Douglas*. Thus, Plaintiff must establish that Defendant's articulated reasons are pretextual.

### iii) Pretext

To survive a summary judgment motion, Plaintiff must present "some evidence, direct or circumstantial, from which a factfinder could reasonably either: (1) disbelieve [Defendant's] articulated reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [Defendant's] action." *Fuentes*, 32 F.3d at 764. The Third Circuit Court of Appeals has held that Plaintiff may establish that

Defendant's proffered reasons are "unworthy of credence," *Sorba v. Pa. Drilling Co.*, 821 F.2d 200, 204 (3d Cir. 1987), by introducing evidence that the employer subjected individuals outside the protected class to more favorable treatment. *See, e.g., Fuentes*, 32 F.3d. at 765; *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 179; *Weldon*, 896 F.2d at 797. If Plaintiff successfully points to evidence sufficient to discredit Defendant's tendered reasons, Plaintiff need not submit additional evidence beyond the initial prima facie case in order to survive summary judgment. *Waldron v. SL Indus., Inc.*, 56 F.3d 491, 495 (3d Cir. 1995). "[A]n employer would be entitled to judgment as a matter of law ... if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant ... evidence that no discrimination had occurred." *Goodman v. Pennsylvania Turnpike Commission*, 293 F.3d 655, 673 (3d Cir.2002).

The record is completely devoid of evidence from which a factfinder could reasonably disbelieve the District's articulated reasons that Plaintiff was fired due to his increasingly unacceptable behavioral issues and his inability to conform his actions to justify continued employment with the District. There is no proof that the District fired Plaintiff because of his age, or for any other reason other than his disciplinary problems. Plaintiff has offered no evidence into the record at all, and Mr. Kranch's deposition testimony only states that he believes that he was replaced by someone younger than him, not that he was fired because of his age. While the hiring of a younger employee might be enough to meet the burden for a prima facie case, it is not enough to discredit the District's articulated legitimate business reason as pretextual. Likewise, the Plaintiff's lack of evidence means that he has not proven that the District's actions were more likely than not motivated by invidious discrimination

against older employees.

Therefore, Plaintiff failed to submit evidence from which a factfinder could reasonably disbelieve Defendant's articulated reasons, or believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of Defendant's action. Consequently, because the Court finds there are no genuine issues of material fact concerning Defendant's facially nondiscriminatory reasons for termination of Plaintiff's employment, Defendant's motion for summary judgement will be granted on this count.

## 2.  ADEA: Disparate Impact

The disparate impact theory is a viable method of proving discrimination under the ADEA. *Smith v. City of Jackson*, 544 U.S. 228, 240 (2005). However, the Supreme Court has held that the prima facie case for disparate impact claims under the ADEA was unaffected by the Civil Rights Act of 1991; thus, the prima facie case requirements for the ADEA are still governed by *Ward's Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642 (1989).

In order to establish a prima facie case of discrimination in a disparate impact employment discrimination case, "a plaintiff must show that the facially neutral employment practice had a significantly discriminatory impact." *Connecticut v. Teal*, 457 U.S. 440, 446 (1982). In *Ward's Cove*, the Court expanded on the prima facie case requirements and held that it is not sufficient for a plaintiff to simply allege that there is a disparate impact on employees or a general policy that leads to a disparate impact, but

> that the plaintiff's burden in establishing a prima facie case goes beyond the need to show that there are statistical disparities in the employer's work force. The plaintiff must begin by identifying the specific employment practice that is challenged.... [T]he plaintiff is in our view responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities.

13

*Ward's Cove*, 490 U.S. at 656 (quoting *Watson v. Fort Worth Bank Trust*, 487 U.S. 977, 994 (1988)).

In this case, Plaintiff has not proffered sufficient evidence to make out a prima facie case for disparate impact under the ADEA. He has not shown statistical evidence or any other evidence that the District's policy's have an adverse effect on workers over forty (40) years of age. Even if he had, he has not pointed to or proven any specific employment practices engaged in by the District that have led to a negative impact on the class of older employees. Nor has he isolated these practices and shown how they are responsible for statistical disparities in the number of young employees versus the number of aged employees. As a result, Plaintiff cannot even survive the requirements for setting out a prima facie case for disparate treatment under the ADEA. Therefore, Defendant's Motion for Summary Judgment will be granted on this count.

**3.    Unlawful Retaliation for Filing Worker's Compensation Claims**

Plaintiff also argues that he has a cause of action for wrongful discharge under Pennsylvania law. The Pennsylvania Supreme Court has held "that a cause of action exists under Pennsylvania law for wrongful discharge of an employee who files a claim for workers' compensation benefits." *Shick v. Shirley*, 716 A.2d 1231, 1238 (Pa. 1998). However, many of the cases that have followed *Shick* have involved defendants that were private entities.

The Pennsylvania Political Subdivision Tort Claims Act (hereinafter Tort Claims Act) grants municipalities, municipal agencies, and municipal officers acting in their official capacity immunity from liability for all state law tort claims.  See   42 Pa. Cons. Stat. § 8541, *et seq*.

There are some exceptions to the grant of governmental immunity under the Tort Claims Act; however, the exceptions listed in 42 Pa. Cons. Stat. Ann. § 8542 are inapplicable to the present action.[4] The statute has one more exception, found in 42 Pa. Cons. Stat. Ann. § 8550, which says that "where a municipal employee's actions amount to actual malice or willful misconduct, the immunity provisions of the Pennsylvania Political Subdivisions Tort Claims Act shall not apply." *Gonzalez v. City of Bethlehem*, No. 93-1445, 1993 WL 276977, at *4 (E.D. Pa. July 13, 1993). However, Section 8550, applies only to remove the immunity of individuals. See 42 Pa. Cons. Stat. Ann. § 8550 ("willful misconduct" eliminates individual immunity at §§ 8545, 8546, 8548, and 8549, but not agency immunity at § 8541).

In *McNichols v. Pennsylvania*, the Commonwealth Court of Pennsylvania held that wrongful discharge causes of action based on retaliation for filing a worker's compensation claim do not fall within the specifically enumerated exceptions to the Tort Claims Act. 804 A.2d 1264, 1267 (Pa. Commnw. Ct. 2002). Therefore, these claims are barred by the doctrine of sovereign immunity when they are brought against defendants that are public entities. The *McNichols* opinion has been cited with approval in this district. *See Dewees v. Haste*, 620 F. Supp.2d 625, 641 (M.D. Pa. 2009) (Kane, C.J.).

The only named defendant in this case is Tamaqua Area School District, which is a municipal entity. Under Pennsylvania law, municipal entities cannot be sued for wrongful

---

[4] The eight exceptions to governmental immunity are:
1. Vehicle liability
2. Care, custody or control of personal property
3. Real property
4. Trees, traffic controls and street lighting
5. Utility service facilities
6. Streets
7. Sidewalks
8. Care, custody or control of animals.

discharge. Therefore, Plaintiff's unlawful retaliation or wrongful discharge claim is barred by the doctrine of sovereign immunity and the Tort Claims Act. Defendant's Motion for Summary Judgment on this claim will be granted.

**4.    Pennsylvania Whistleblower's Act**

Plaintiff alleges that he was fired from his job for reporting the potentially inappropriate relationship between Mr. Melnick and Ms. Kamant. The Pennsylvania Whisteblower's Act makes it unlawful for an employer to discharge an employee "because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste." 43 Pa. Cons. Stat. Ann. § 1423(a). The Whistleblower's Act defines wrongdoing as a "violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." 43 Pa. Cons. Stat. Ann. § 1422.

There is also a causal component to a claim brought under the Whistleblower's Act; in order to survive a motion for summary judgment on a cause of action pursuant to the Whistleblower's Act , the Plaintiff must demonstrate a causal connection between his reports of wrongdoing and the subsequent termination, especially where the employer has "offered a legitimate reason for [the] termination." *See Lee v. Comhar Inc.*, 244 Fed. Appx. 464, 467 (3d Cir. 2007); *see also Cipriani v. Lycoming County Housing Authority*, 177 F. Supp.2d 303, 329 (M.D. Pa. 2001) (holding that Whitleblower's Act claim requires a showing of a good faith report or wrongdoing and concrete facts that the report led to the termination of employment).

In this case, it is unclear whether or not the Plaintiff has proven that he has even made a report of wrongdoing. The District ultimately determined that the relationship between Melnick and Kamant was consensual and never made a formal ruling that the relationship was inappropriate. Plaintiff himself testified that, as far as he knew, Kamant and Melnick were in a voluntary, consensual sexual relationship at the time he was fired. Furthermore, the District did not have any written policy regarding sexual relationships between co-workers, according to Makuta. Therefore, none of this would rise to the level of wrongdoing under the plain language of the Whistleblower's Act. The only evidence that Plaintiff points to in support of his position, is that he had heard that Kamant complained the she was being sexually harassed by Melnick. However, according to Mr. Kranch's deposition testimony, Kamant's supposed complaints about harassment did not occur until after Kranch was fired.

Even if we can assume that Kranch was reporting a relationship that included sexual harassment, he has put forth no evidence showing that his reports were the reason he was fired. At the time Kranch made his report, Makuta and other executive members of the School District were already investigating this relationship between Melnick and Kamant. This investigation revealed that there was no wrongdoing. In short, the record does not reveal anything that tends to show that Plaintiff was fired *because* of his reporting the relationship between Melnick and Kamant, even when viewed in the light most favorable to Plaintiff. Particularly in light of the list of legitimate reasons for his firing, Plaintiff has not created a genuine issue of material fact that would tend to show the causal connection between his complaints of supposed wrongdoing and his termination from employment. Therefore, Defendant's Motion for Summary Judgment on this count will be granted.

**5.      42 U.S.C. § 1983: Procedural Due Process**

Count VI of Plaintiff's Complaint brings a claim pursuant to 42 U.S.C. § 1983 against

the District. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom
> or usage . . . subjects, or causes to be subjected, any citizen of the United
> States or other persons within the jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured. . . .

42 U.S.C. § 1983.

Plaintiff brings a claim pursuant to § 1983 for violation of his right to procedural due

process under the Fourteenth Amendment to the U.S. Constitution. The Fourteenth

Amendment protects a person against government deprivation of life, liberty, or property

without due process of law.  Plaintiff alleges deprivations of both a property and a liberty

interest.

A. Property Interest

Plaintiff alleges that his termination was a deprivation of his property interest in

employment. "Property interests are not created by the Constitution, 'they are created and

their dimensions are defined by existing rules or understandings that stem from an

independent source such as state law....'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S.

532, 540 (1985) (*quoting Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). The Third

Circuit Court of Appeals has held that a "just cause" clause  in a valid collective bargaining

agreement creates a cognizable property interest that is protected by the Fourteenth

Amendment. *Dee v. Borough of Dunmore*, 549 F.3d 225, 231-232 (3d Cir 2008). As

evidenced by the grievance hearing and opinion, Plaintiff was subject to such a clause in a

collective bargaining agreement. In light of *Dee*, Kranch had a property interest in not being

18

fired without just cause or being subject to an unpaid suspension because the CBA prohibited reductions in compensation without just cause.

Having determined Plaintiff had a valid property interest, the Court must determine what process was due. Generally, courts utilize the factors set forth by the U.S. Supreme Court in *Matthews v. Eldridge*, 424 U.S. 319 (1976), to engage in a case-by-case inquiry. Those factors are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

Weighing the *Matthews* factors, the U.S. Supreme Court in *Loudermill v,* 470 U.S. at 546, held that, prior to termination, "the tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."

In *Dee*, the plaintiff was not provided with notice or a hearing prior to being suspended. 549 F.3d at 232. In fact, the plaintiff was suspended by the Borough Council after a vote was held that relied only on information provided by the Borough Manager. *Id.* at 227-228. The plaintiff was not present at the vote, was not aware that his personnel file was under review, and did not learn of charges against him until a letter confirming the suspension was sent to his supervisor. *Id.* at 228. The Third Circuit Court of Appeals held that the plaintiff was not given sufficient process prior to his suspension, reasoning that doling out a suspension to an employee without notice or a hearing ran an unacceptably high

risk that the second *Mathews* factor might be implicated, leading to an erroneous deprivation.

The Third Circuit Court of Appeals has held that "[w]here a due process claim is raised against a public employer, and grievance and arbitration procedures are in place . . . those procedures satisfy due process requirements '"even if the hearing conducted by the Employer ... [was] inherently biased.'" *Dykes v. Southeastern Pennsylvania Transportation Authority*, 68 F.3d 1564, 1571 (3d Cir. 1995) (quoting *Jackson v. Temple University*, 721 F.2d 931, 933 (3d Cir. 1983)).

In this case, Plaintiff received sufficient process prior to his suspension. As is explained in Makuta's March 27, 2007 letter, Plaintiff had notice of the charges against him and had a chance to explain himself before the suspension. After the initial complaints were filed against Kranch, he was afforded a meeting with Makuta, Melnick, and Gottstein (the head of the union for the District custodians) on March 15, 2007. During that meeting, Makuta discussed the incidents including the locking of the loading dock door and the reports that Kranch had followed the second-shift custodians. At the meeting, Kranch was given a chance to tell his side of the story. After the meeting, the District conducted a twelve (12) days investigation that revealed the District had just cause to suspend Kranch.

Weighing the *Mathews* factors, Plaintiff's private interest does not outweigh the public need for school employees to work without threats, accusations and fear of violence from co-workers. The March 15, 2007 meeting, coupled with the subsequent investigation provided protection from the possibility of an erroneous deprivation. Finally, the District's interest in having a safe work environment with the ability to quickly remove potentially dangerous employees, particularly in the setting of elementary and secondary schools, is a

very strong one. As such, sufficient process was given to Kranch prior to his unpaid suspension.

Plaintiff also received sufficient process before being fired. Kranch testified at his deposition that he received the letter notifying him of the Executive session to discuss his future employment with the District and the reasons why this session was necessary. He further testified that he actually attended this session and was represented by a union lawyer. Although he claims that he was told he was not allowed to bring personal representation, he later goes on to explain that he did not bring a personal lawyer because he felt it was unnecessary to bring two lawyers. As above, this clearly is sufficient pre-deprivation process to satisfy the Fourteenth Amendment.

Plaintiff also had a post-deprivation grievance hearing where he was represented by a union attorney, given the opportunity to cross-examine witnesses, introduce documentary evidence, and present testimony. There are no arguments that the hearing itself was improper, and even if it had been biased somehow, it would still be sufficient process to satisfy constitutional requirements. Therefore, Plaintiff was not deprived of a property interest without due process of law, and Defendant's motion for summary judgment will be granted on this count.

B. Liberty Interest

Plaintiff's brief in opposition to the instant motion claims that Plaintiff is making claims for property *and* liberty interests, but cites no case law and makes no arguments supporting a claim for deprivation of a liberty interest. However, Plaintiff's Amended Complaint alleges that he suffered a "loss of reputation" as a result of deprivation his constitutional rights. Thus, this Court will discuss whether Plaintiff has been deprived of a liberty interest.

21

The U.S. Supreme Court has held that a person has a protectable liberty interest in his or her reputation. *See Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."). "Courts have subsequently clarified, however, that 'reputation alone is not an interest protected by the Due Process Clause.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. Pa. 2006) (quoting *Versarge v. Twp. of Clinton, New Jersey*, 984 F.2d 1359, 1371 (3d Cir. 1993)). "Rather, to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest ... We have referred to this as the 'stigma-plus' test." *Id*.

The Third Circuit Court of Appeals has held that a plaintiff satisfies the "plus" element of the test where he has a constitutionally protected property interest. *Dee*, 549 F.3d at 234. As the Court has already determined that Plaintiff has a property interest created by state law in remaining free from unpaid suspension or termination, he satisfies the "plus" element here. To satisfy the "stigma" prong of the test, Plaintiff must show "that the purportedly stigmatizing statement(s) (1) were made publicly ... and (2) were false." *Hill*, 455 F.3d at 236.

Nothing in the record shows any stigmatizing statements were made by the District. The Plaintiff does not offer proof that any such statements were made to the public. Despite the entirely unsupported claim in the Plaintiff's brief that there is a cognizable claim for a deprivation of liberty interest in this case, this Court fails to find where the Plaintiff has either argued or attempted to prove any such claim. Therefore, because there is no genuine issue

of material of fact raised by the Plaintiff, Defendant's Motion for Summary Judgment will be granted on this count.

## CONCLUSION

Plaintiff has failed to raise a genuine issue of material fact on any count that would prove that the Defendant is not entitled to judgment as a matter of law. Thus, Defendant's Motion for Summary Judgment will be granted.  An appropriate Order follows.


December 7, 2009                                                          /s/ A. Richard Caputo
Date                                                                           A. Richard Caputo
                                                                                United States District Judge

23

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BLAIR T. KRANCH

      CIVIL ACTION NO. 3:08-CV-83

      Plaintiff,

        v.

TAMAQUA AREA SCHOOL DISTRICT

      (JUDGE CAPUTO)

      Defendant.

## <u>ORDER</u>

**NOW**, this __7th__ day of December, 2009, **IT IS HEREBY ORDERED** that:

(1)    Defendant's Motion for Summary Judgment is **GRANTED**.

(2)    **JUDGMENT IS ENTERED** in favor of Defendant.

(3)    The Clerk of Court shall mark this case as **CLOSED**.

 

                          /s/ A. Richard Caputo
                          A. Richard Caputo
                          United States District Judge